1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

2

3  ------------------------------------X
                             :

4  UNITED STATES OF AMERICA,     :
                             :  12-CR-00171 (ADS)

5                             :

6              v.         :  100 Federal Plaza
                           :  Central Islip, New York

7  ROLAND STERN,              :
                           :  October 18, 2012

8                 Defendant.  :
  ------------------------------------X

9

10       TRANSCRIPT OF CRIMINAL CAUSE FOR GUILTY PLEA
           BEFORE THE HONORABLE GARY R. BROWN
             UNITED STATES MAGISTRATE JUDGE

11
  APPEARANCES:

12

13  For the Government:        CHARLES N. ROSE, ESQ.
                       United States Attorneys Office
                       610 Federal Plaza

14                       Central Islip, New York  11722

15

16  For the Defendant:         STEVEN LOSQUADRO, ESQ.
                       649 Route 25A

17                       Suite 4
                       Rocky Point, New York 11778

18

19

20  Court Transcriber:        SHARI RIEMER
                       TypeWrite Word Processing Service
                       211 N Milton Road

21                       Saratoga Springs, New York  12866

22

23

24

25

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

2

1   (Proceedings began at 2:43 p.m.)

2              THE CLERK:  Calling criminal case 2012-171, <u>United</u>

3   <u>States of America v. Roland Stern</u>.

4              Counsel, please state your appearances for the

5   record.

6              MR. ROSE:  Assistant United States Attorney Charlie

7   Rose.  Good afternoon, Your Honor.

8              THE COURT:  Good afternoon.  Good to see you, sir.

9              MR. LOSQUADRO:  Your Honor, good afternoon.  Steven

10  Losquadro on behalf of Mr. Stern.

11             THE COURT: Mr. Losquadro, good to see you.  Mr.

12  Stern, good to see you as well.

13             THE DEFENDANT: Thank you, sir.

14             THE COURT: Sir, you may recall my name is Magistrate

15  Judge Brown.  I'm a magistrate judge.  Judge Spatt is a judge

16  assigned to your case.

17             THE DEFENDANT: Yes, sir.

18             THE COURT: But he's asked me to take a plea this

19  afternoon because he's on a trial.  You have the right to have

20  your plea heard before him but you can consent and I believe

21  you've signed the consent indicating that you're going to plea

22  before me.  Is that okay with you, sir?

23             THE DEFENDANT: Yes, sir.

24             THE COURT: And you understand all of that; right?

25             THE DEFENDANT: Yes, sir.

3

1          THE COURT: And you've had enough time to talk to

2    your lawyer; correct?

3          THE DEFENDANT: Yes, sir.

4          THE COURT: All right.  I have the signed agreement

5    here.  Any changes to the -- from the draft?

6          MR. ROSE: Just the date for early acceptance was

7    changed to today's date, Your Honor.

8          THE COURT: Got it.  All right.  Very good.

9          Mr. Stern, before recommending acceptance of your

10   plea there are a number of questions I must ask to assure

11   myself that it is a valid plea.  If you don't understand any

12   of my questions please say so.  If you can't hear me you let

13   me know.  I'll repeat or rephrase the question.  Okay?

14         THE DEFENDANT: Yes.

15         THE COURT: Please swear the defendant, please.

16   (AT THIS TIME, THE DEFENDANT, ROLAND STERN, WAS SWORN.)

17         THE CLERK:  Please state your name for the record.

18         THE COURT: Have a seat.

19         THE DEFENDANT: Roland Stern.

20         THE COURT: Mr. Stern, do you understand that having

21   been sworn anything you say today that's not true would be

22   subject to a potential charge of making a false statement or

23   committing perjury which is a separate crime?  Do you

24   understand that, sir?

25         THE DEFENDANT: Yes, sir.

4

1          THE COURT: How old are you, sir?

2          THE DEFENDANT: 68.

3          THE COURT: How far did you go in school?

4          THE DEFENDANT: Four years of college.

5          THE COURT:  Are you presently or have you recently

6    been under the care of a physician or a psychiatrist?

7          THE DEFENDANT: Two physicians.

8          THE COURT: For what, sir?

9          THE DEFENDANT: One -- well, both of them for my

10   heart.

11         THE COURT: Okay.  Are you on any kind of medication?

12         THE DEFENDANT: Yes.

13         THE COURT: What kind of medication?

14         THE DEFENDANT: I got a list of them.  Amiodarone --

15   well, I have a defibrillator.  That's the one doctor that I go

16   to.  My other doctor is -- he's a -- not a heart specialist

17   but he takes care of my medication.  I'm on -- I have a list

18   of them but --

19         THE COURT: Well, let me start with the most

20   important fact.  Are there any of them that impair your

21   ability to think or to understand what's going on?

22         THE DEFENDANT: No, sir.

23         THE COURT: Okay.  Other than the drugs you were just

24   discussing, in other words the cardiac related drugs have you

25   taken any other drugs, pills, medication, anything else in the

5

1  last 24 hours?

2          THE DEFENDANT: No, sir.

3          THE COURT: Have you had any alcoholic beverages in

4  the last 24 hours?

5          THE DEFENDANT: No, sir.

6          THE COURT: Okay.  Have you been hospitalized in the

7  past for narcotics addiction?

8          THE DEFENDANT: For what, sir?  I'm sorry.

9          THE COURT: For narcotics.

10          THE DEFENDANT: No, sir.  No.

11          THE COURT: How about alcohol addiction?

12          THE DEFENDANT: No, sir.

13          THE COURT: Is your mind clear today?

14          THE DEFENDANT: Yes, sir.

15          THE COURT: Do you understand what's going on here?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT: And you know why we're here and what

18  we're planning on doing?

19          THE DEFENDANT: Yes, sir.

20          THE COURT: Let me ask your attorney.  Have you

21  discussed the matter with your client?

22          MR. LOSQUADRO: Your Honor, I have.

23          THE COURT: Does he understand the rights that he may

24  be waiving today if he pleads guilty?

25          MR. LOSQUADRO: In my estimation he does.

6

1          THE COURT: Is he capable of understanding the nature

2   of the proceedings?

3          MR. LOSQUADRO: Yes, sir.

4          THE COURT: Any doubt as to his competency to plead?

5          MR. LOSQUADRO: None whatsoever.

6          THE COURT: Thank you.

7          Sir, let me start off by telling you you have the

8   right to plead not guilty.  As you have before you could

9   maintain that not guilty plea.  Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  If you plead not guilty under the

12   constitution and laws of the United States, you are entitled

13   to a speedy and public trial by jury with the assistance of

14   your lawyer on the charges.  Do you understand that?

15          THE DEFENDANT: Yes, sir.

16          THE COURT:  At the trial, you'd be presumed to be

17   innocent and the Government would have to overcome that

18   presumption and prove you guilty by competent evidence and

19   beyond a reasonable doubt and you would not have to prove that

20   you are innocent.  And if the Government failed, the jury

21   would have the duty and responsibility of finding you not

22   guilty.  Do you understand?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  In the course of the trial, witnesses

25   for the Government would have to come to court and testify in

7

1  your presence and your counsel has the right to cross-examine

2  the witnesses for the Government, to object to the evidence

3  offered by the Government and offer evidence on your behalf.

4  Do you understand?

5          THE DEFENDANT: Yes, sir.

6          THE COURT: At the trial while you would have the

7  right to testify if you chose to do so, you would not be

8  required to testify.  Under the Constitution of the United

9  States, you may not be compelled to incriminate yourself.  If

10  you decided not to testify, the court Spatt would instruct the

11  jury that they may not hold that against you.  Do you

12  understand that?

13          THE DEFENDANT: Yes, sir.

14          THE COURT:  If you plead guilty and I recommend

15  acceptance of the plea and Judge Spatt accepts that plea, you

16  will be giving up your constitutional rights to a trial and

17  the other rights I just discussed.  There will be no further

18  trial of any kind and no right to an appeal as to whether

19  you're guilty or not.  The court will simply enter a judgment

20  of guilty on the basis of your guilty plea.  You may have the

21  right to appeal with respect to the sentence but as to guilt

22  or innocence this is it.  Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT: Let me go to the Government for a second.

25  What is the appellate waiver if you may?

8

1          MR. ROSE: Your Honor, as provided in the Plea
2    Agreement which I believe is before the court, the defendant
3    agrees to waive his right to appeal if he's sentenced to a
4    term of imprisonment of 121 months or less.

5          THE COURT: So, sir, just to be clear.  You might
6    have the right to appeal if you were sentenced to more than
7    121 months.

8          THE DEFENDANT: Yes, sir.

9          THE COURT: But if you're sentenced to less than
10   that, no right to appeal at all, and even if you're sentenced
11   to more than 121 months the only thing that goes on appeal is
12   the sentence, not whether or not you did it.  Do you
13   understand that?

14         THE DEFENDANT: Yes, sir.

15         THE COURT: If you plead guilty I have to ask you
16   questions about what you did in order to satisfy myself that
17   you're guilty of the charges to which you seek to plead guilty
18   and you will have to answer questions and acknowledge your
19   guilt.  Thus, you will be giving up your right not to
20   incriminate yourself.  Do you understand?

21         THE DEFENDANT: Yes, sir.

22         THE COURT: Are you willing to give up your right to
23   a trial and the other rights I've just discussed?

24         THE DEFENDANT: Yes.

25         THE COURT: Let's talk a little bit about the

9

1   agreement.  You have a Plea Agreement with the Government

2   which I believe is before me and you signed that agreement

3   here, sir; yes?

4            THE DEFENDANT: Yes, sir.

5            THE COURT: Before you signed it, did you read it?

6            THE DEFENDANT: Yes, sir.

7            THE COURT: Did you understand it?

8            THE DEFENDANT: Yes, sir.

9            THE COURT: Did you have an opportunity to talk to

10  your attorney about it?

11           THE DEFENDANT: Yes, sir.

12           THE COURT: Did you ask him questions and you got all

13  those questions answered?

14           THE DEFENDANT: I think I asked him one question,

15  yes, and I got the answer.

16           THE COURT: Do you have other questions now you'd

17  like to either ask him or ask me about the agreement?

18           THE DEFENDANT: No, sir.

19           THE COURT: Mr. Rose, do me a favor, just outline the

20  agreement if you would.

21           MR. ROSE: Certainly, Your Honor.  The defendant will

22  plead guilty to a lesser included count of the indictment.

23  The Plea Agreement, the terms of that count would be a maximum

24  term of imprisonment of 20 years.  There's no minimum term.

25  The minimum supervised release term of three years, a maximum

10

1   supervised release term of life to follow any term of

2   imprisonment.   If a condition of release is violated the

3   defendant may be sentenced to up to two years without credit

4   for presentence -- prerelease imprisonment or time previously

5   served on post release supervision.   There's a maximum fine of

6   $1 million.   Restitution is not applicable, and there's a

7   $100.00 special assessment.

8           The defendant agrees in the agreement to waive

9   rights to appeal if he's sentenced to 121 months or below.   He

10  agrees not to challenge drug type or quantity set forth in the

11  lab reports.

12          The defendant also agrees to waive all defenses

13  based on the statute of limitations and venue with respect to

14  any prosecution that is not time barred on the date that this

15  agreement is signed which is today.   In the event that the

16  defendant's conviction is later vacated for any reason, the

17  defendant violates this agreement or the defendant's plea is

18  later withdraw the defendant waives any right to additional

19  disclosure from the Government.

20          The defendant also agrees that he's not a prevailing

21  party under the Hyde Amendment.   In exchange the office agrees

22  that it would not bring any further criminal charges for the

23  conduct that's described in Paragraph 5 and based upon

24  information now known to the office it will take no position

25  concerning where within the guidelines range the sentence

11

1  should fall or make a motion for an upward departure under the

2  sentencing guidelines.

3          THE COURT: Mr. Stern, we're going to talk about this

4  a little bit more but as an overview, do you understand what

5  Mr. Rose just said?

6          THE DEFENDANT: Yes, sir.

7          THE COURT: Mr. Rose, while I have you, could you

8  just lay out the elements of the crime with which the

9  defendant is charged, please?

10          MR. ROSE: Certainly, Your Honor.  The defendant is

11  charged in the indictment as it's on the lesser included

12  charge that in or about and between February 1, 2009 and March

13  7, 2012, those dates being approximate and inclusive, within

14  the Eastern District of New York and elsewhere the defendant

15  conspired knowingly and intentionally with others to

16  distribute a controlled substance which contained heroine.

17          THE COURT: Mr. Stern, first of all, let's just talk

18  about that charge.  You've discussed with your counsel the

19  nature of the charge contained in the indictment and you

20  understand those elements Mr. Rose is talking about?

21          THE DEFENDANT: Yes, sir.

22          THE COURT: Obviously Mr. Rose went through this but

23  I'll just go through it.  Do you understand that the maximum

24  term of imprisonment of 20 years that could be imposed on that

25  count and there's no minimum term of imprisonment?  Do you

12

1  understand that?

2         THE DEFENDANT: Yes, sir.

3         THE COURT: There's a minimum supervised release term

4  of three years.  Before I go on with that, do you understand

5  what supervised release is?

6         THE DEFENDANT: I believe so, yes.

7         THE COURT: It's kind of probation.

8         THE DEFENDANT: Probation type thing.

9         THE COURT: So basically you're going to remain under

10  the supervision of the court for a period of at least three

11  years and potentially as long as life and you have to

12  understand that during that period of time if you violate the

13  conditions of supervised release, which will include things

14  like not using drugs, not committing other crimes and so

15  forth, you can go back to jail for another two years.  Do you

16  understand that?

17         THE DEFENDANT: Yes, sir.

18         THE COURT: That would be on top of the sentence you

19  already served.

20         THE DEFENDANT: Yes, sir.

21         THE COURT: Sir, I understand -- I've just got to

22  explain the maximum here.  So the maximum fine which you could

23  be subject to will be $1 million.  The minimum is zero but

24  somewhere in between there the judge will likely impose a

25  fine.  Do you understand that?

13

1          THE DEFENDANT: Yes, sir.

2          THE COURT: There's a $100.00 special assessment

3    which you have to pay.  Do you understand that?

4          THE DEFENDANT: Yes, sir.

5          THE COURT: I want to talk a little bit about the

6    sentencing guidelines.  Has your attorney explained the

7    sentencing guidelines to you?  Have you discussed them?

8          THE DEFENDANT: Yes, sir.

9          THE COURT: The most important thing about the

10   guidelines to know is that they are just that, guidelines.

11   They're not mandatory on the court although it is required

12   that the court consider them.  So the court has to think about

13   them but it's not a guarantee.  The only guarantee you have is

14   that 20 year maximum.  Do you understand?

15         THE DEFENDANT: Yes, sir.

16         THE COURT: The Government has suggested in the Plea

17   Agreement -- they've done an estimate of 97 to 121 months

18   although they also indicated that if you took the plea today

19   they would ask for an additional level, downward departure of

20   87 to 108 months.  That would again be the recommendation

21   under the guidelines that the Government is calculating.  I

22   don't know if they're right but you understand what their

23   suggestion is?

24         THE DEFENDANT: Yes, sir.

25         MR. LOSQUADRO: Your Honor, if I just may in that

14

1   regard.  I think it's probably the appropriate moment for me

2   to comment in that regard.

3                  THE COURT: Sure.

4                  MR. LOSQUADRO: And that is that Mr. Rose and I have

5   discussed that Mr. Stern is safety valve eligible.

6                  THE COURT: Okay.

7                  MR. LOSQUADRO: And of course we've discussed the

8   fact that there are the conditions pursuant to 3553 and also

9   that there are conditions that must be met with regard to Mr.

10  Stern having come forward and met with the Government --

11  meeting with the Government and conveying certain information.

12                 In addition, there is also the possibility of

13  additional downward modifications that could be made based on

14  evidence that we know to be peculiar to the certain

15  circumstances of this case and I discussed with Mr. Rose that

16  while that was something that Mr. Rose could not include in

17  this agreement I would place that on the record and he did not

18  oppose that.

19                 THE COURT: Okay.

20                 MR. LOSQUADRO: Given that those factors do exist

21  here.

22                 THE COURT: Thank you for covering that.  I was going

23  to actually ask about the safety valve. I thought there might

24  be an issue.

25                 So, Mr. Stern, just so we're clear, your attorney

15

1   just laid out several reasons why theoretically at least the

2   range might be lower than 87 to 108 months but that doesn't

3   modify -- and he may be right.  I don't know.  Judge Spatt

4   will look at a number of factors.  There will be an

5   investigation report, a background report on you, there will

6   be other things that he'll consider, and your attorney may

7   well be right.  Mr. Rose's initial calculation may be right or

8   maybe everybody is wrong.  We don't know but it's important

9   that you understand what he guidelines are and it is an

10  important thing.  I don't mean to minimize it but I just want

11  you to understand that if they're wrong and the numbers are

12  different you can't back out of the plea.

13            THE DEFENDANT: Yes, sir.

14            THE COURT: Do you understand?

15            THE DEFENDANT: Yes, sir.

16            THE COURT: Do you have any questions for me about

17  that?  Let me say when I ask that question it's a complicated

18  area and it's fair if you had a question.

19            THE DEFENDANT: No, I'm okay with it.

20            THE COURT: You're okay?

21            THE DEFENDANT: Yes, sir.

22            THE COURT: Good.  All right.  So we talked about

23  supervised release.  We talked about the sentence.  There's no

24  restitution here.  Do you have any other questions you'd like

25  to ask me or your attorney about the charges, about anything

16

1   else that's going on here, sir?

2           THE DEFENDANT: No, sir.

3           THE COURT: So you think you're ready to plead

4   guilty?

5           THE DEFENDANT: Yes, sir.

6           THE COURT: Counsel, is there any legal reason why

7   the defendant should not plead guilty?

8           MR. LOSQUADRO: No, Your Honor.

9           THE COURT: Are you satisfied -- I'm sorry.  Back to

10  you, Mr. Stern.  Are you satisfied with your legal

11  representation up to this point?

12          THE DEFENDANT: Yes, sir.

13          THE COURT: What is your plea on the lesser included

14  offense which is included in the indictment?

15          THE DEFENDANT: Guilty, sir.

16          THE COURT: Mr. Rose, am I correct that it's a lesser

17  included offense?

18          MR. ROSE: That is correct, Your Honor.

19          THE COURT: Just so we're clear about that, sir, a

20  lesser included offense means it's the same charge, the

21  narcotics conspiracy but it's just a lesser weight is what

22  you're pleading guilty to.  Do you understand?

23          THE DEFENDANT: Yes, sir.  Thank you.

24          THE COURT: All right.  So you pled guilty -- are you

25  making that plea of guilty voluntarily and of your own free

17

1   will?

2           THE DEFENDANT: Yes, sir.

3           THE COURT: Has anyone threatened you or forced you

4   to plead guilty?

5           THE DEFENDANT: No, sir.

6           THE COURT: Other than the agreement with the

7   Government which we talked about today, has anyone made any

8   promises that caused you to plead guilty?

9           THE DEFENDANT: No, sir.

10          THE COURT: That even goes to sentencing, sir.

11  Understand that your attorney should make an estimate, right,

12  but nobody can promise you what the guidelines will be and

13  what the sentence will be.  Do you understand?

14          THE DEFENDANT: Yes, sir.

15          THE COURT: I assume no one has promised you what

16  your sentence will be?

17          THE DEFENDANT: No, sir.

18          THE COURT: So, sir, did you as charged in the sole

19  count in or about and between those dates in 2009, 2012

20  possess or conspire to possess with intent to distribute a

21  substance containing heroine?

22          THE DEFENDANT: Yes, sir.

23          THE COURT: Sir, in your own words I need you to tell

24  me what you did to make you guilty of that crime.

25          THE DEFENDANT: I would drive to Brooklyn and

18

1 purchase heroine from a couple of different individuals and I
2 would just drive back to my house and give it to my daughter.
3 That's all.  That's all I did.
4 　　　　THE COURT: So I assume you were paying for it when
5 you were buying it --
6 　　　　THE DEFENDANT: Yes, sir.
7 　　　　THE COURT: -- when you were acquiring it in
8 Brooklyn.  You weren't charging your daughter for it; is that
9 right?
10 　　　　THE DEFENDANT: No, sir.  Well, she paid -- I mean
11 she went through her -- she was in a car accident and she went
12 through her inheritance out of that and then I was paying for
13 the rest.
14 　　　　THE COURT: Sir, did you use heroine?
15 　　　　THE DEFENDANT: No.  No, sir.
16 　　　　THE COURT: Mr. Rose, I'm just wondering if that's a
17 sufficient allocution, if there needs to be a consideration
18 element on the distribution end for it to matter.
19 　　　　MR. ROSE: The things that I think that are missing
20 so far from the allocution are one that he agreed with these
21 other individuals that are named in the indictment to possess
22 heroine with the intent to then distribute the heroine to his
23 daughter and then just not only did he do it in Brooklyn but
24 he also brought the drugs back to Suffolk County.
25 　　　　THE COURT: On the second part, the Suffolk County

19

1    part isn't critical because it's in the Eastern District but,

2    sir, did you in fact bring it back -- were you living in

3    Suffolk at the time?

4              THE DEFENDANT: Yes.

5              THE COURT: Did the individuals who were picking it

6    up from, did they know you were going to give it to your

7    daughter?

8              THE DEFENDANT: Yes, sir.

9              THE COURT: Anything else?

10             MR. ROSE: Just that he knew that it was illegal to

11   do.

12             THE COURT: Oh.  So I assume you knew that was not --

13   that was against the law, sir?

14             THE DEFENDANT: Yes, I know it was illegal.

15             THE COURT: Mr. Rose, why don't you outline what the

16   Government's proof would have been had the defendant proceeded

17   to trial?

18             MR. ROSE: Certainly, Your Honor.  In this case in

19   addition to the investigation that was conducted by the

20   agents, the Government would put forth wire tap calls

21   containing the defendant conspiring with others to pick up

22   heroine for distribution.  The defendant also made post

23   Miranda admissions to acquiring heroine to distribute to his

24   daughter.  In addition to that, there is drugs that were

25   recovered from co-defendants at the time of the arrest and the

20

1   Government would seek that admission as well.

2          THE COURT: Just so we're clear, the Government's

3   proof would not include distribution to anyone else by this

4   individual?

5          MR. ROSE: No, just to one person.

6          THE COURT: I just need a moment.

7          The statute we're looking at, the substantive part

8   of the statute is contained in 846 or -- I guess 846 and then

9   with reference back to --

10          MR. ROSE: 846 and 841(b)(1)(c).

11          THE COURT: Right.  So just give me one minute.

12                    [Pause in proceedings.]

13          THE COURT: Let me ask defense counsel.  Let me ask

14   defense counsel.  Is there anything else you think we need to

15   cover before we conclude this?

16          MR. LOSQUADRO: No.

17          THE COURT: Based on the information provided, I find

18   the defendant is acting voluntarily, fully understands his

19   rights and the consequences of his plea, and that there is a

20   factual basis for the plea.  I therefore recommend the

21   acceptance of the guilty plea to the sole count of the

22   indictment and more specifically the lesser included offense

23   of the indictment.

24          Mr. Rose, anything else we need to do today?

25          MR. ROSE: No.  The Government would just maintain

21

1  the bond conditions as is.

2           THE COURT: Okay.  Any objection to continuing the

3  bail status as it is?

4           MR. LOSQUADRO: No, Your Honor.

5           THE COURT: So, Mr. Stern, I'm going to leave you on

6  bail as it's set.  Whatever obligations you've been subject to

7  and complying with you have to continue to comply and most

8  importantly you have to show up in this court.  Right, sir?

9           THE DEFENDANT: Yes, sir.  Thank you.

10          THE COURT: Very good.  Thank you.

11          MR. ROSE: Thank you, Your Honor.

12          MR. LOSQUADRO: Thank you, Your Honor.

13  (Proceedings concluded at 3:03 p.m.)

14                        *  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

22

1         I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6                                    _____

7                                              Shari Riemer

8    Dated:   November 7, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25